IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GERALD E. BREWER, SR., ) | |
|     Petitioner, ) | |
| ) | |
|     v. ) | 2:09-cv-1106 |
| ) | |
| COMM. OF PA. PAROLE, et al., ) | |
|     Respondents. ) | |

MEMORANDUM and ORDER

Mitchell, M.J.:

Gerald E. Brewer, Sr., has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

Gerald E. Brewer, Sr., who is not presently incarcerated has presented a petition for a writ of habeas corpus seeking to challenge his conviction, by a jury, of theft by unlawful taking and retaliation against a victim, witness or party at No. CC200203571 in the Court of Common Pleas of Allegheny County, Pennsylvania. On August 25, 2003, he was sentenced to an aggregate two to seven year period of imprisonment.[1]

An appeal was taken to the Superior Court in which the issues presented for review were:

> I. The evidence is insufficient to prove that the defendant had violated 18 Pa.C.S.A. § 4953 retaliation against witness, victim, or party.
>
> II. The court erred in admitting testimony that various procedures relating to the practices and procedures for seized money in place both before and during defendant's term as chief of police were "unreasonable". Since those opinions

---

[1] See: Petition at ¶¶ 1-7.

would not be helpful and would confuse, mislead or prejudice the jury.[2]

On June 2, 2005, the judgment of sentence was affirmed.[3]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the sole issue presented was:

> Did the Superior Court err in affirming petitioner's conviction for violation of 18 Pa.C.S.A. § 4593 retaliation against a witness as an "accomplice" ... in contravention of this Court's holdings in [citing Pennsylvania cases] requiring proof of the accomplice's intention and action in aiding an uncharged but otherwise complicit principal in the perpetration of an underlying crime?[4]

Leave to appeal was denied on November 10, 2005.[5]

Petitioner then filed a post-conviction motion which was treated as a PCRA petition.[6] Counsel was appointed to represent the petitioner, an amended PCRA petition was filed, and following an evidentiary hearing, the petition was dismissed on September 21, 2007.[7] An appeal was taken to the Superior Court in which the issues presented were:

> 1. Did the trial court err as a matter of law in failing to grant the petitioner's request for a new trial when the petitioner established that he had discovered after his conviction that the District Attorney's office had failed to turn over exculpatory evidence at his trial in violation of his due process rights under Brady v. Maryland, 373 U.S. 83 (1963)?
>
> 2. In the alternative, did the trial court err when it failed to award the petitioner a

---

[2] See: Exhibit 10 to the answer of the Commonwealth.

[3] See: Exhibit 12 to the answer of the Commonwealth.

[4] See: Exhibit 14 to the answer of the Commonwealth.

[5] See: Exhibit 15 to the answer of the Commonwealth.

[6] See: Exhibit 16 to the answer of the Commonwealth.

[7] See: Exhibit 23 to the answer of the Commonwealth.

new trial based upon his claim of after-discovered evidence, the memorandum withheld by the Assistant District Attorney?[8]

On July 9, 2008, the denial of post-conviction relief was affirmed.[9]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which those same issues were raised[10] and on November 25, 2008, leave to appeal was denied.[11]

The instant petition was executed on August 11, 2009, and in it, Brewer contends he is entitled to relief on the following grounds:

> 1. Trial court erred in failing to grant a new trial when after discovered evidence revealed that the prosecution had failed to disclose exculpatory evidence in violation of Brady v. Maryland which would have demonstrated that no funds were actually missing.
>
> 2. Improper introduction at trial of the petitioner's letter of resignation which was a privileged internal document protected by the First Amendment.[12]

It is provided in 28 U.S.C. §2254(b) that:

> An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.[13]

---

[8] See: Exhibit 24 to the answer of the Commonwealth.

[9] See: Exhibit 26 to the answer of the Commonwealth.

[10] See: Exhibit 28 to the answer of the Commonwealth.

[11] See: Exhibit 29 to the answer of the Commonwealth.

[12] See: Petition at ¶ 13.

[13] We note that although not incarcerated at the time the petition was filed, Brewer was on probation/parole and thus "in custody" within the meaning of the act .Leyva v. Williams, 504 F.3d 357 (3d Cir.2007).

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez, supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application" clauses have independent meaning.

In the instant case, the respondent concedes that the available state court remedies have been exhausted and for this reason, the petition is properly before this Court.[14]

The factual background to this prosecution is set forth in the July 9, 2008 Memorandum of the Superior Court:

> The Wilkinsburg Police Department established a procedure when handling money recovered from drug crimes. The money was to be sealed in an envelope; a property voucher (PV) detailing the amount, denominations and serial numbers of the money involved was attached to the envelope; and the envelope with PV was logged and placed in a safe in the police chief's office. From 1993 through 1997, all money was accounted for as several different police chiefs went through the office. In 1997, Brewer became the chief of police. Brewer raised suspicion when he did not follow the established procedures for dealing with money recovered from drug crimes. An investigation ensued in which several detectives set up a test to determine whether Brewer was stealing the confiscated drug money. Their suspicions were confirmed when Brewer handed the detectives money that did not match the denominations or serial numbers of the money requested for a specific case. A jury convicted Brewer of one count of theft and one count of retaliation against a witness and Brewer was sentenced to two to seven years of

---

[14] See: Answer of the Commonwealth at p.22.

incarceration.[15]

The petitioner's first argument is that he was denied a fair trial when he learned, post-trial, that he had not been provided with exculpatory evidence as required by Brady v. Maryland. In reviewing this claim the Superior Court noted that:

> After trial, Brewer learned of a memorandum created by Detective Frances LaQuatra while investigating possible theft by Brewer. The memorandum contains the detailed calculations of the money that went into and out of the safe in the chief's office from 1995 to 2000. Brewer claims that there are "mathematical irregularities" in the memorandum that show that either no money was in fact stolen from the safe or that the Commonwealth itself is unable to determine how much money was stolen. If the former were the case, there would be insufficient evidence to prove theft. If the latter were the case, the jury was not given the opportunity to evaluate the Commonwealth's discrepancies. Either way, Brewer argues that, in failing to provide him the memorandum, the Commonwealth was in violation of **Brady**. The Commonwealth argues that the memorandum was work product and therefore not discoverable.[16]
>
> In Brady v. Maryland, it was held:
>
> [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

373 U.S. at 87.

It is in this context that we evaluate Brewer's claims. Specifically at issue, is Commonwealth's Exhibit 30 which is a November 9, 2001 Allegheny County District Attorney's investigative report of the results of a November 20, 2000 search executed at the Wilkinsburg Police Department for the purpose of reviewing police seizures which occurred during the period of 1995 through 2000. It is contended by the petitioner that the irregularities in that document

---

[15] See: Exhibit 26 to the answer at pp.1-2.

[16] Id. at pp.2-3.

demonstrate either that there is insufficient evidence to demonstrate a theft or that in fact no money was stolen from the police safekeeping. The preparer of the memorandum in question, Detective Frances LaQuatra testified at her deposition in a related civil action that: during the search, the police reviewed all seized property vouchers for the period from 1995 through 2000; that they determined what had been returned to defendants, what was tendered to the courts and thereby determined what amount should be remaining in the police safe; that although $38,318.43 was unaccounted for, the police determined that $6,708.89 could clearly be attributable to theft by the petitioner and for this reason he was charged with a theft in the latter amount and that the document which she prepared contains typographical errors[17]. She also testified at the post-conviction hearing held on March 27, 2007, that the police seized the property vouchers and calculated the amount of funds that were unaccounted for and that there were typographical errors in the report.[18]

The question before the state courts and this court is whether the failure to produce this report to the petitioner prior to trial amounted to a <u>Brady</u> violation. In reviewing this claim, the Superior Court wrote:

> Here, Brewer's argument of a **Brady** violation fails for two reasons. First, Brewer had available to him the information contained in the memorandum. The calculations in the memorandum were based solely on the PVs from 1995 to 2000 and the inventories conducted by the District Attorney's investigators. Both the PVs and the inventories were available to Brewer before his trial. Thus, Brewer could have conducted his own calculations which, he now claims, would have demonstrated his point. Additionally, Brewer, as the police chief, had access to all money that went into and out of the safe, as well as the internal records thereof. Having this information, Brewer himself could have obtained the evidence

---

[17] See: Exhibit 17 at Appendix D at pp.43, 48, 49, 71.

[18] See: Exhibit 31 at pp.15, 17, 20.

contained in the memorandum. We conclude, therefore, that no **Brady** violation occurred.[**Commonwealth v. Paddy**, 800 A.2d 294 (Pa.2000)]. Second, the memorandum was the work product of Detective LaQuatra. The memorandum contained the personal notes and calculations of the defective, based on the evidence from the PVs and inventories. Therefore, the Commonwealth was not required to provide Brewer with the memorandum during pretrial discovery.[19]

In United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984) the Court held

Unlike Rule 16 and the Jencks Act, however, Brady "is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."... There can be no violation of Brady unless the government's nondisclosure infringes the defendant's fair trial right... To constitute a Brady violation, the nondisclosure must do more than impede the defendant's ability to prepare for trial; it must adversely affect the court's ability to reach a just conclusion, to the prejudice of the defendant ... Moreover, "the government is not obliged under Brady to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." [United States v. Campagnuolo, 592 F.2d 852 (3d Cir. 1979)].

As applied to the instant case, the state courts, after hearing, made factual findings that the information contained in the LaQuatra memorandum was equally available to the petitioner, or with any reasonable diligence could have been obtained by him. This conclusion is presumptively correct here. 28 U.S.C. 2254 (e)(1). Nothing that appears in the record demonstrates any basis for challenging this presumption.

In addition, as the Superior Court observed, Brewer's Brady claim arose on the basis of his mistaken calculation of the figures contained in the LaQuatra report. Specifically, the Court concluded that if properly reviewed the calculations fail to demonstrate a surplus of funds as the petitioner claims, but rather conclusively show that there was a significant deficiency which formed the basis of the prosecution.[20] Accordingly, the evidence involved was not even

---

[19] See: Exhibit 26 to the answer of the Commonwealth.

[20] See: Id. at p.6

exculpatory.

As set forth above, the conclusions of the Superior Court do not involve any improper application of law as determined by the United States Supreme Court and thus do not provide a basis for relief here.

The petitioner's second contention that he is entitled to relief arises from his claim that his conviction for retaliation against witnesses violates his First Amendment right to petition. Specifically, in this regard he contended in his appellant's brief to the Superior Court,

> the prosecution's theory was that Mr. Brewer participated in Chief Adams' decision to transfer Officers Kocon and Tuite and the entire CID Division of the Wilkinsburg Police Department out of their assignments on December 26, 2000, in retaliation for Kocan and Tuite having reported Brewer's alleged taking of money from the Borough safe although Brewer had already resigned on December 8, 2000, effective December 21, 2000, and despite Chief Adams and Mayor Young's denial that Brewer played any role in the decision by Adams.[21]

The retaliation claim arose from Brewer's apparent attempt to have those officers who had prompted the investigation against him by the District Attorney disciplined for having done so. Specifically, this alleged retaliation was based on Brewer's belief that his downfall was apparently fostered by the actions of those police officers in recommending that the status of seized funds be investigated by the District Attorney and that their subsequent discipline resulted from communications he had written.

> In support of his assertion of insufficiency, [of the evidence] Brewer does not argue that the evidence failed to establish specific elements of the crime, but rather that because his conviction was based on accomplice liability arising from his alleged complicity with acting chief Harvey Adams, the fact that Adams was not convicted or even charged with the primary offense defeats the basis for his own conviction ...   In support of his position, Brewer ...[alleges] that "to be convicted as an accomplice, there must be an underlying criminal act by a

---

[21] See: Exhibit 10 at p.13.

9

principal."[22]

In reviewing this claim, the Superior Court observed that as a matter of law, Brewer's claim was meritless. Specifically, the Court observed that "a defendant may be convicted as an accomplice notwithstanding the absence of any corresponding prosecution of the principal."[23] As a matter of state substantive law, the determination of the state court is conclusive here Taylor v. Horn, 504 F.3d 416 (3d Cir.2007), cert. denied 129 S.Ct. 92 (2008).

In its response, the Commonwealth represents that its search of the record has failed to disclose any indication that the petitioner's letter of resignation was introduced into evidence.[24] Additionally, the matter was not raised in the Pennsylvania appellate courts as a First Amendment claim, and for this reason is procedurally defaulted here. Coleman v. Thompson, 501 U.S. 722,750 (1991). Nevertheless the Commonwealth persuasively argues that even when viewed in a First Amendment context, the petitioner's letter to the mayor as well as his subsequent e-mails where not constitutionally protected.

The right to petition contained in the First Amendment is embodied in the general protection of free speech and recognizes the right of a citizen to petition the government for redress but does not create any concomitant obligation on the part of the government to accord

---

[22] See: Exhibit 12 (Memorandum of the Superior Court) to the answer at p.7.

[23] See: Id. at pp.7-8. The Court specifically cited to 18 Pa.C.S.A. 306(g) which states:
An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

[24] See: Answer of the Commonwealth at p.29.

the petition any privilege or create any obligation on the part of the government. See: <u>We the People Foundation, Inc. v. U.S</u>, 485 F.3d 140 (C.A.D.C. 2007), cert. denied 128 S.Ct. 939 (2008). What the petitioner alleges here is that in petitioning the government agency, the governmental agency was restricted in its use of his "petition". No such right exists. Accordingly, if it occurred, the introduction of this evidence would not have violated any constitutional standards of Brewer's right to petition.

     Thus, because the petitioner has failed to demonstrate that the determinations of the Pennsylvania Courts were contrary to federal law as expounded by the United States Supreme Court, his petition will be denied and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

     An appropriate Order will be entered.

ORDER

AND NOW, this 5th day of October 2009, for the reasons set forth in the foregoing Memorandum, the petition of Gerald E. Brewer, Sr. for a writ of habeas corpus is dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied.

                s/ Robert C. Mitchell
                United States Magistrate Judge